# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DAVID S. UZZELL**,

    Defendant.

No. 18-03076-CR-S-BP

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Casey Clark, Assistant United States Attorney, and the defendant, David S. Uzzell ("the defendant"), represented by Teresa Fiester, of Grantham Fiester Law.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to the sole count of the Information charging him with a violation of 18 U.S.C. § 1344(1), that is, bank fraud. The defendant also agrees to forfeit to the United States the currency and property

described in the forfeiture allegation of the Information. By entering into this plea agreement, the defendant admits he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

Beginning in February 2016, and continuing until in or about October 2016, in the Western District of Missouri, the defendant, David S. Uzzell, knowingly executed a scheme and artifice to defraud a financial institution, namely BancorpSouth, by means of material false or fraudulent pretenses, representations, and promises.

During this time, the defendant, a resident of Greene County, Missouri, within the Western District of Missouri, operated and then owned an auto dealership, Z Auto Group LLC, a Missouri limited liability company, with a principal place of business located in Springfield, Greene County, Missouri.

BancorpSouth was a bank holding company headquartered in Tupelo, Mississippi, with bank branches located in the states of Alabama, Arkansas, Florida, Louisiana, Mississippi, Missouri, Tennessee, Texas, and Illinois. BancorpSouth offered floor plan financing to certain automobile dealers so they could purchase inventory to sell. BancorpSouth was a financial institution as that term was defined in Title 18, United States Code, Section 20(1), since it was an insured depository institution under the Federal Deposit Insurance Act, Title 12, United States Code, Section 1813(c)(2).

NextGear Capital ("NextGear") was a company that provided floor plan financing to automobile dealers so they could purchase inventory to sell. NextGear was headquartered in Carmel, Indiana, and was a subsidiary of Cox Automotive, which, in turn, was a subsidiary of Cox Enterprises, Inc., headquartered in Atlanta, Georgia.

From at least November 15, 2015, and continuing through October 2016, said dates being approximate, Z Auto Group maintained a floor plan loan agreement ("BancorpSouth Agreement") with BancorpSouth, which provided that BancorpSouth would provide financing for certain automobiles that Z Auto Group desired to purchase and resell for a profit. Under the terms of the BancorpSouth Agreement, Z Auto Group's automobiles were collateralized as part of the financing. Upon approval of financing for a certain automobile, BancorpSouth would transfer funds from Z Auto Group's line of credit with BancorpSouth into Z Auto Group's operating account with BancorpSouth, account number ending 9060. The BancorpSouth Agreement provided that, once such funds were provided by BancorpSouth to the operating account, Z Auto Group was to use such funds only for the purchase of the approved automobile and reasonable delivery costs of such automobile. The BancorpSouth Agreement further required that upon the sale of a financed automobile, Z Auto Group was to promptly pay BancorpSouth the amount due for the financing of such automobile. The BancorpSouth Agreement prohibited Z Auto Group from seeking

2

financing from BancorpSouth for an automobile that Z Auto Group had already financed through a separate entity.

From at least April 2016, and continuing through October 2016, said dates being approximate, Z Auto Group maintained a floor plan loan agreement ("NextGear Agreement") with NextGear, which provided that NextGear would provide financing for certain automobiles that Z Auto Group desired to purchase and resell for profit. Under the terms of the NextGear Agreement, NextGear obtained a security interest in Z Auto Group's automobiles, including all automobiles financed by NextGear "now owned or hereafter acquired." The NextGear Agreement provided that, once such funds were provided to Z Auto Group, it was to use such funds only for the purchase of the approved automobile.

From February 2016, and continuing through October 2016, said dates being approximate, the defendant had authority through Z Auto Group to apply for specific financing from BancorpSouth and NextGear, through the respective floor plan loan agreements, for automobiles, for the purpose of purchasing such automobiles for later sale at a profit. As a part of his duties and, later, ownership of Z Auto Group, the defendant received access, electronic and otherwise, to Z Auto Group's BancorpSouth operating account, number ending 9060. During such time, the defendant possessed authority to issue, and cause to issue, wire transfers, using Z Auto Group funds, for the payment of expenses related to Z Auto Group's business activities, including for the purchase and sale of automobiles financed by BancorpSouth or NextGear. The defendant, and others that he employed, pursuant to his direction, regularly issued, and caused to issue, wire transfers for such purposes, including wire transfers involving Z Auto Group's BancorpSouth operating account, number ending 9060.

Neither BancorpSouth nor NextGear authorized the defendant to utilize floor plan funds for his personal benefit.

On or before January 2016, and continuing through October 2016, the defendant entered into an agreement with an entity for the purpose of building the defendant a new residence at 587 N. Farm Road 223, Springfield, Missouri. Through such process, the entity in charge of such build began to bill the defendant for charges that the defendant could not personally afford.

As a part of his scheme, the defendant utilized his management position and responsibilities with Z Auto Group, and his business relationship with BancorpSouth through the BancorpSouth Agreement, to electronically transfer money from Z Auto Group's BancorpSouth operating account to the defendant's various personal credit card accounts and to the company financing his personal mortgage on his residence, and to issue, and cause to issue, payments to various entities for the defendant's personal benefit, including for the purpose of paying for his new residence and the improvements therein. The moneys that the defendant utilized in this manner had been placed in the operating account by BancorpSouth for the sole purpose of purchasing a certain automobile that the defendant had represented to BancorpSouth that he would purchase with said money. The defendant

did not have authorization from BancorpSouth to utilize such funds for any personal purpose, including any purpose related to his new residence.

As a further part of his scheme, and on numerous occasions, the defendant utilized his management position and responsibilities with Z Auto Group, and his business relationship with BancorpSouth through the BancorpSouth Agreement, to request and receive floor plan financing from BancorpSouth for the purchase of certain automobiles, when said automobiles were already purchased and possessed by Z Auto Group through funds provided by NextGear through the NextGear Agreement. In his request to BancorpSouth for financing for said automobiles, the defendant represented to BancorpSouth that his request was in accordance with the terms of the BancorpSouth Agreement, meaning that the defendant would use such funds for the purchase of the specified automobile, and that such automobile was free of any lien and encumbrance. The defendant did not disclose to BancorpSouth that Z Auto Group had already purchased the specific automobile through financing provided by NextGear or that NextGear possessed a security interest in such automobile. The defendant would then utilize such funds provided by BancorpSouth to pay off balances due to NextGear, and not for the purchase of the specific automobile the defendant represented to BancorpSouth would be purchased using such funds. BancorpSouth and NextGear did not have a business relationship with one another for purposes of providing financing to Z Auto Group. The defendant did not have authorization from BancorpSouth to utilize such funds for the payment of any other floor plan financer.

As a further part of his scheme, and on numerous occasions, the defendant utilized his management position and responsibilities with Z Auto Group, and his business relationship with NextGear through the NextGear Agreement, to request and receive floor plan financing from NextGear for the purchase of certain automobiles, when said automobiles were already purchased and possessed by Z Auto Group through funds provided by BancorpSouth through the BancorpSouth Agreement. In his request to NextGear for financing for said automobiles, the defendant represented to NextGear that his request was in accordance with the terms of the NextGear Agreement, meaning that the defendant would use such funds for the purchase of the specified automobile, and that such automobile was unencumbered from any senior security interest. The defendant did not disclose to NextGear that Z Auto Group had already purchased the specific automobile through financing provided by BancorpSouth, or that BancorpSouth possessed a security interest in such automobile. The defendant would then utilize such funds provided by NextGear to pay off balances due to BancorpSouth, and not for the purchase of the specific automobile the defendant represented to NextGear would be purchased using such funds. The defendant did not have authorization from NextGear to utilize such funds for the payment of any other floor plan financer.

Through the actions described above, and for purposes of the defendant's guilty plea to the sole charge in the Information, the defendant admits that, from on or about February 2016, and continuing until in or about October 2016, in the Western District of Missouri, the defendant, David S. Uzzell, knowingly executed a scheme and artifice to defraud a

financial institution, namely BancorpSouth, by means of material false or fraudulent pretenses, representations, and promises.

Specifically, the defendant admits that on or about June 17, 2016, said date being approximate, in Greene County, in the Western District of Missouri, and elsewhere, he, with the intent to defraud, knowingly and willfully devised and executed, or attempted to execute, the above-described scheme and artifice to defraud BancorpSouth, a financial institution, by means of material false or fraudulent pretenses, representations, and promises, and, for the purpose of executing or attempting to execute the above-described scheme, requested financing for a 2014 Subaru Outback, Vehicle Identification Number 4S4BRBCC9E3290398, from BancorpSouth, and represented to BancorpSouth that such financing would be used for the purchase of such automobile and according to the terms of the BancorpSouth Agreement, without disclosing to BancorpSouth that the defendant had already received funds for such automobile from NextGear, that NextGear possessed a security interest in such automobile, and, in fact, such BancorpSouth financing would instead be used for the defendant's personal benefit and to pay back NextGear for its financing of separate automobiles and the Subaru Outback, all in violation of Title 18, United States Code, Section 1344(1).

The defendant further admits that the collective loss to the two companies that resulted from the defendant's above-described scheme totaled not less than approximately $792,972.15, and that from his BancorpSouth operating account, number ending 9060, he made payments to Wells Fargo and other entities and individuals for his residence located at 587 N. Farm Road 223, Springfield, Missouri 65802.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. §1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. §1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to the sole count of the Information charging him with bank fraud in violation of 18 U.S.C. § 1344(1), the maximum penalty the Court may impose is not more than 30 years of imprisonment, a

$1,000,000 fine, five years of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a class B felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than five years for the offense; and that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of not more than three years for the charge, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

    h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

i. The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) including, but not limited to a money judgment in the total amount of the victim's losses at the time of sentencing, currently not less than $626,472.15 in United States currency, his residence located at 587 N. Farm Road 223, Springfield, Missouri, 65802, and his business, Z Auto Group, but which may be reduced by liquidation of the defendant's assets prior to sentencing;

With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenge in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

j. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he has or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period of February 2016 to the present. The defendant agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets.

To this end, the defendant agrees that, if he has not already done so, within **seven** days of his signing of this plea agreement, that he will list, with a qualified real estate professional, his house located at 587 N. Farm Road 223, Springfield, Greene County, Missouri, 65802, for market value and maintain such property pending the sale to maximize the sale price for an arms-length sale.

The defendant also agrees that if he sells or transfers ownership interest in any property under his control or custody between February 2016 and the time of sentencing, the proceeds from that sale will be placed in an escrow account and will be remitted to the Clerk of the Court for the United States District Court to reduce the balance of the defendant's criminal restitution judgment. The defendant agrees that his failure to place all proceeds for any such sales into the escrow account, or transfers any assets to the control of another, such action will be considered a breach of the plea agreement and the government will be released from any and all sentencing recommendations. In addition, the defendant agrees and understands that should he fail to pay over such proceeds after sentencing, the United States will file a motion for resentencing, pursuant to 18 U.S.C. § 3614;

k. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

7

l. Within ten days of the acceptance of this plea agreement, at the request of the United States Attorney's Office, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the United States Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility;

m. At the request of the United States Attorney's Office, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to a) his scheme to defraud BancorpSouth; b) his scheme to defraud NextGear; and c) his possession of cocaine from February 2016 to May 31, 2018.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional

8

Case 6:18-cr-03076-BP   Document 10   Filed 08/09/18   Page 8 of 18

charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

9

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. §2B1.1, which provides a **base offense level of seven**;

    c. Pursuant to §2B1.1(b)(1), a **14-level increase** is appropriate because the loss amount was between $550,000 and $1,500,000;

    d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a **three-level** reduction pursuant to §3E1.1(a) and (b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

    e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

    g. The United States agrees not to seek an upward departure from the Guidelines or a sentence above the Guidelines range. Additionally, the United States agrees not to recommend a sentence higher than the mid-point of the

applicable Guidelines range. However, the defendant remains free to seek a downward variance from the Guidelines or a sentence outside the Guidelines range. The agreement by the Government to not seek a sentence outside of the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

      h.     The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and,

      i.     The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11.    **<u>Effect of Non-Agreement on Guidelines Applications</u>.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12.    **<u>Change in Guidelines Prior to Sentencing</u>.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

11

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and,

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against him;

   e. the right to compel or subpoena witnesses to appear on his behalf; and,

   f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court

12

Case 6:18-cr-03076-BP   Document 10   Filed 08/09/18   Page 12 of 18

may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with all other uncharged related criminal activity. The defendant further agrees that the total amount of restitution reflected in this agreement results from the defendant's illegal conduct. The defendant agrees, pursuant to 18 U.S.C. § 3663A, to pay restitution to the below-listed entities, in the following amounts:

        1. Not less than $212,123 to BancorpSouth; and
        2. Not less than $414,349.15 to NextGear.

b. The defendant agrees to sell and/or liquidate the assets listed below as soon as reasonably and practically possible, for the purpose of utilizing the proceeds from such sale and/or liquidation to pay for the restitution due as a part of this plea agreement, including, but not limited to:

> 1. Real estate property consisting of land and a house located at 587 N. Farm Road 223, Springfield, Missouri, 65802; and
> 2. Real estate property and other property consisting of a business, namely Z Auto Group, located at 587 N. Farm Road 223, Springfield, Greene County, Missouri, and all interest and proceeds.

The defendant agrees that any monetary proceeds he receives from the sale and/or liquidation of any of the above assets will be promptly paid to the United States District Court Clerk's Office, Western District of Missouri, to reduce restitution owed by the defendant. All restitution payments shall be paid by check, shall include this case number in the memo line, and shall be delivered to the Clerk's office or addressed to the Clerk's office at the following address:

> United States District Court Clerk's Office
> Western District of Missouri
> Charles Evans Whittaker Courthouse
> 400 E. 9th Street, Rm. 1510
> Kansas City, Missouri 64106

If these assets are not sold and/or liquidated by the time of the sentencing hearing, the defendant agrees that the court's Judgment and Commitment may order the sale and/or liquidation of these items within a prompt and reasonable amount of time after the sentencing hearing.

c. The defendant agrees to pay restitution as ordered by the Court in any restitution order entered pursuant to this plea agreement, and that such restitution is due and payable immediately upon sentencing.

d. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

e. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

f. Within ten days of the execution of this plea agreement, at the request of the United States Attorney's Office ("USAO"), the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

g. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

h. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

i. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the **Special Assessment of $100** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

j. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

k. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Order of Prohibition**. The defendant agrees to stipulate and consent to an order of prohibition from further participation in the conduct of selling automobiles throughout the period of his post-release supervision.

18. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute,

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

TIMOTHY A. GARRISON
United States Attorney

Dated: 8/9/18         */s/ Casey Clark*
CASEY CLARK
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8/9/18         */s/ David S. Uzzell*
DAVID S. UZZELL
Defendant

I am defendant David S. Uzzell's attorney. I have fully explained to him his rights with respect to the offense charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, David S. Uzzell's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8/9/18         */s/ Teresa Fiester*
TERESA FIESTER
Attorney for Defendant